## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 24-cr-00047-APM** |
| | : | |
| **DAVID BRIAN HOWARD,** | : | |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States respectfully submits this sentencing memorandum in connection with the above-captioned matter. Defendant David Brian Howard ("Howard") pled guilty to two Class B misdemeanors, 40 U.S.C. § 5104(e)(2)(D) (Count Three) and 40 U.S.C. § 5104(e)(2)(G) (Count Four). For the reasons set forth below, the government requests that this Court sentence Howard to 21 days of incarceration, 12 months of probation, and a $500 fine. Consistent with the plea agreement, the government further requests that the Court impose $500 in restitution payable to the Architect of the Capitol.

## I.    INTRODUCTION

Howard participated in the January 6, 2021 riot at the United States Capitol—a violent riot that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

---

1 As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts,

The government's recommendation is supported by the following factors: (1) Howard illegally entered the U.S. Capitol twice despite the signs that the area was restricted—including tear gas being deployed near the Senate Wing Doors, an alarm sounding by the Senate Wing Doors, and the police presence inside both the Senate Wing Doors and the Crypt; (2) Howard remained unlawfully within the restricted area and the Capitol itself for at least 36 minutes; (3) Howard entered the Capitol on January 6 even though he knew Congress had gathered that day to certify the Electoral College vote for the 2020 presidential election; and (4) Howard encouraged other rioters to advance further into the U.S. Capitol by directing them where to go on multiple occasions. By entering the Capitol twice and assisting others, Howard's conduct exacerbated the riot that relied on sheer numbers to overwhelm police officers who were fighting to protect the legislators, breach the Capitol, and disrupt the election certification proceedings.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.  The Riot at the U.S. Capitol on January 6, 2021

The government refers the Court to the general summary of the riot at the U.S. Capitol on January 6, 2021 in the Statement of Offense, ECF No. 21, ¶¶ 1-7.

### B.  Howard's Participation in the Riot at the U.S. Capitol on January 6, 2021

On January 4 and 5, 2021, Howard traveled from Dallas, Texas to Washington, D.C. Before January 6, Howard planned on attending the protests in Washington, D.C. As shown in Image 1 below, Howard saved a screenshot of a social media post describing several planned events on January 6. The post stated, among other things, "We the People must take to the US Capitol lawn

---

but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

and steps and tell Congress #DoNotCertify on #JAN6! Congress cannot certify this fraudulent Electoral College" and "Democrats are scheming to disenfranchise and nullify Republican votes. It's up to the American people to stop it. Along with President Trump, we will do whatever it takes to ensure the integrity of this election for the good of the nation." This post shows that Howard knew about Congress' role in certifying the 2020 presidential election on January 6, 2021.



*Image 1: Screenshot of Social Media Post*

On January 6, Howard, circled in yellow in the images below, attended the former President's "Stop the Steal" rally at the Ellipse, as depicted in Image 2 below.   While there, Howard recorded video of the former President's speech, including the portion in which he encouraged rally attendees to march towards the Capitol. After attending the rally, Howard walked to the U.S. Capitol.



*Image 2: Howard Attending the Rally at the Ellipse*

Around 2:37 p.m., Howard reached the Upper West Terrace of the U.S. Capitol and joined a mob congregating outside the Senate Wing Doors, as depicted in Image 3 below.



*Image 3: Howard on the Upper West Terrace*

Around this time, the mob became increasingly hostile and police officers responded by deploying tear gas near the Senate Wing Doors. Image 4 below is a screenshot from an open-source video. It shows Howard looking in the direction of the Senate Wing Doors moments after the tear gas had been deployed. *See* Government Sentencing Exhibit 1 (0:44 to 0:52 elapsed).



*Image 4: Howard Looking in the Direction of the Senate Wing Doors*

A few minutes later, rioters breached the Senate Parliamentarian Door at 2:42 p.m. Police officers attempted to stop the rioters but were outnumbered and overrun. Around this time, Howard put on a white respirator face mask and advanced further into the mob towards the Senate Parliamentarian Door, as shown in Image 5 below, a screenshot from open-source video. That video depicted the chaos on the Upper West Terrace at that time, including several rioters ascending the side of the Capitol building using suspended scaffolding.



*Image 5: Howard Among the Mob Outside the Senate Parliamentarian Door*

About twenty minutes later, at 3:01 p.m., Howard unlawfully entered the Capitol building

through the Senate Wing Doors, as depicted in Image 6 below.



*Image 6: Howard Entering the U.S. Capitol Building the First Time*

By that time, the windowpanes in the Senate Wing Doors had been shattered, the adjacent windows had been broken and rioters were climbing through them, an alarm was blaring, and broken and vandalized furniture littered the ground. Once inside, Howard used his cell phone extensively to take photographs and/or record videos. The FBI was unable to recover these photographs/videos after a forensic search of Howard's cell phone and Google account.

Moments after entering, Howard approached a line of U.S. Capitol Police officers in riot gear guarding the north end of the corridor, as depicted in Image 7 below. He continued to take photographs and/or record video before turning away from the officers.



*Image 7: Howard Approaching a U.S. Capitol Police Officer in Riot Gear in the Lower Right Corner of the Screenshot*

A few minutes later, at 3:05 p.m., Howard exited the Capitol building through the Senate Wing Doors, the same doors through which he entered. *See* Government Sentencing Exhibit 2 (from 0:00 to 0:14 elapsed). In Image 8 below, shortly before exiting, Howard was still using his cell phone to take photos and/or record video.



*Image 8: Howard Shortly Before Exiting the U.S. Capitol Building*

Rather than leave the restricted area around the U.S. Capitol, Howard entered the building a second time two minutes later, at 3:07 p.m., again through the Senate Wing Doors. Howard again ignored all the signs that he did not have permission to be there, including the tear gas, the broken windows, the alarm, and the police presence near the Senate Wing Doors. Upon entering, Howard appeared to tell another rioter where to go, pointing in the direction of the Crypt, as shown in Image 9 below. *See also* Government Sentencing Exhibit 2 (at 3:07:08 PM).



*Image 9: Howard Entering the U.S. Capitol Building the Second Time and Pointing in the Direction of the Crypt*

At the time of Howard's second entry, U.S. Capitol Police officers were still guarding the north end of the corridor to prevent rioters from gaining access to the Senate Wing.

From there, Howard advanced towards the Crypt. Image 10 below is a screenshot from open-source video. It captured Howard, before entering the Crypt, gesturing with his hand towards other rioters, encouraging them to move further into the building. *See* Government Sentencing Exhibit 3 (from 1:28 to 1:56 elapsed).



*Image 10: Howard Encouraging Other Rioters to Advance Towards the Crypt*

At approximately 3:08 p.m., Howard entered the Crypt, as depicted in Images 11 and 12 below.



*Image 11: Howard in the Crypt of the U.S. Capitol Building*



*Image 12: Howard in the Crypt Approaching a Line of Police Officers*

For approximately the next minute, Howard wandered around the Crypt. At one point, he approached several police officers while apparently using his phone. He then turned around and left the Crypt at 3:09 p.m.

Three minutes later, Howard returned to the area near the Senate Wing Doors. On two separate occasions, as depicted below in Images 13 and 14, Howard stopped to interact with other rioters, gesturing with his hand to point in the direction of the Crypt.



*Image 13: Howard Directing an Individual Towards the Crypt*



*Image 14: Howard Directing Another Individual Towards the Crypt (his hand is by the American flag pointing in the direction of the Crypt)*

At 3:13 p.m., Howard exited the U.S. Capitol building through the Senate Wing Doors. Altogether, Howard unlawfully remained within the restricted area and the Capitol itself for at least 36 minutes. According to travel records, Howard departed from Washington, D.C. on January 7, 2021.

### C.  The Charges and Plea Agreement

On January 25, 2024, the government charged Howard by Information for violating 18 U.S.C. § 1752(a)(1) (entering and remaining in a restricted building or grounds) (Count One); 18 U.S.C. § 1752(a)(2) (disorderly and disruptive conduct in a restricted building or grounds) (Count Two); 40 U.S.C. § 5104(e)(2)(D) (disorderly conduct in a Capitol building or grounds) (Count Three); and 40 U.S.C. § 5104(e)(2)(G) (parading, demonstrating, or picketing in a Capitol building). *See* ECF No. 10. On April 5, 2024, Howard pled guilty to Counts Three and Four of the Information. Pursuant to the terms of the plea agreement, Howard agreed to pay $500.00 in restitution to the Architect of the Capitol. *See* ECF No. 20 at 6.

### III.     STATUTORY PENALTIES

Howard now faces sentencing on Counts Three and Four. As noted by the plea agreement, Howard faces up to six months of imprisonment and a fine of up to $5,000 on each count. Howard must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). Because both offenses constitute Class B Misdemeanors, the Sentencing Guidelines do not apply. *See* 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV.     SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. As explained below, the Section 3553(a) factors support a sentence of 21 days of incarceration, 12 months of probation, a $500 fine, and $500 in restitution.

#### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Howard's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors.

15

Although Howard did not engage in any violent or destructive acts,[2] he willfully participated in the mob that disrupted the congressional proceedings on January 6, 2021. *See United States v. Mazzocco*, 21-cr-00054 (TSC), Tr. 10/4/2021 at 25 ("A mob isn't a mob without the numbers. The people who were committing those violent acts did so because they had the safety of numbers."). As described above, Howard illegally entered the Capitol twice, knew about Congress' role in certifying the election that day, and even encouraged other rioters to advance further into the U.S. Capitol by directing them where to go on multiple occasions. Based on this conduct, Howard was an active and willful participant in the mob that entered the Capitol and disrupted the congressional proceedings. The nature and circumstances of Howard's offense conduct establish the need for a sentence of incarceration to be followed by a term of probation.

**B.  Howard's History and Characteristics**

Howard does not have a criminal history and has led a law-abiding, normal life, *see* PSR ¶¶ 40–62. By the same token, nothing in Howard's background mitigates his culpability for the crimes as part of the mob the breached the Capitol on January 6, 2021. To the contrary, by his own account, he is a successful businessman and was 43 years old at the time of the offense. He should have known better than to participate in a riot that sought to interfere with the constitutional obligations of the Congress.

**C.  The Need for the Sentence to Reflect the Seriousness of the Offense and Promote Respect for the Law**

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration,

---

[2] The absence of violent or destructive acts is not a mitigating factor. Had Howard engaged in such conduct, he would have faced additional criminal charges.

16

as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.").

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. *See* 18 U.S.C. §§ 3553(a)(2)(B), (C); *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

#### 1.  General Deterrence

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the U.S. Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." *United States v. Thomas Gallagher*, 21-CR-00041-CJN, Tr. 10/13/2021 at 37. General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power from one president to the next. There is possibly no greater factor that this Court must consider in imposing a just sentence.

#### 2.  Specific Deterrence

The need for the sentence to provide specific deterrence also weighs in favor of incarceration. Howard accepted responsibility by surrendering to the FBI and pleading guilty. But

Howard remained silent about his conduct until submitting a letter to this Court. Although Howard may be remorseful, he still made elected to walk to the Capitol after listening to the former president's speech. And he elected to join the mob on the Upper West Terrace where he unlawfully entered the Capitol twice through the Senate Wing Doors—knowing full well Congress' role in certifying the election results that day. With the 2024 presidential election approaching, and the continued revisionist history about January 6, the potential for a repeat of what happened looms large. The Court's sentence must deter Howard specifically, and others generally, from going down the path of political rioting and violence again.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in the riot at the U.S. Capitol, ranging from unlawful entry misdemeanors, such this case, to assault on police officers, to conspiracy to corruptly obstruct Congress.[3] This Court must sentence Howard based on his own conduct and relevant characteristics, but should give substantial weight to the context of other "defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6).

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating

---

[3]  A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

factors present here, the conduct in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

For example, in *United States v. Dalton Ray Crase and Troy Williams*, No. 21-cr-82 (CJN), the defendants entered the Capitol building twice on January 6, 2021, and each pleaded guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G). The defendants entered the U.S. Capitol through the Senate Parliamentarian Door not long after witnessing violence against police officers guarding that door, left, and later re-entered building through the Senate Wing Doors where Howard entered twice. They did not leave Capitol grounds until tear gas and flash grenades were deployed by police to disband the mob. Judge Nichols sentenced both defendants to 15 days of intermittent incarceration and 36 months of probation.

Similarly, in *United States v. Dennis Adams*, No. 23-cr-396, the defendant entered the Senate Parliamentarian Door but was pushed out by police after three minutes. Like Howard, Adams remained in close vicinity and re-entered the Capitol ten minutes later through a broken window by the Senate Wing Doors. And like Howard, Adams expressed remorse and never made inflammatory statements or bragged about his conduct on social media. Adams pled guilty to one count of violating 18 U.S.C. § 1752(a)(1). Judge Chutkan sentenced Adams to 45 days of incarceration and 12 months of probation. Adams spent nearly three hours within the restricted area on January 6, which explains why Judge Chutkan's sentence was higher than the government's recommendation here.

Like Crase, Williams, and Adams, Howard entered the Capitol building twice, pled guilty, and received credit for acceptance of responsibility. The misdemeanor defendants who entered the U.S. Capitol twice, like Howard, may not have committed violent or destructive crimes. But

successive breaches of the U.S. Capitol on January 6, 2021, should not be treated as minor crimes. A probationary sentence should not become the default. *See United States v. Morgan-Lloyd*, 21-cr-00164 (RCL), Tr. 6/23/2021 at 19 ("I don't want to create the impression that probation is the automatic outcome here because it's not going to be."); *see also United States v. Ehrke*, 21-cr-00097 (PFF), Tr. 9/17/2021 at 13.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008).

## V. RESTITUTION

The Victim and Witness Protection Act of 1982 (VWPA), 18 U.S.C. § 3663, "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA). Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA

also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Howard must pay $500 in restitution, which reflects in part the role Howard played in the riot on January 6.[4] ECF No. 20 at 6. As the plea agreement reflects, the riot at the U.S. Capitol has caused approximately $2,923,080.05 in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023. Howard's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 87.

## VI.    FINE

The defendant's convictions for violations of 40 U.S.C. § 5104(e)(2)(D) and 40 U.S.C. § 5104(e)(2)(G) subject him to a statutory maximum fine of $5,000 on each count. *See* 18 U.S.C. § 3571(b). In determining whether to impose a fine, the sentencing court should consider the defendant's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1); U.S.S.G. § 5E1.2(d). The burden is on the defendant to show present and prospective inability to pay a fine. *See United States v. Gewin*, 471 F.3d 197, 203 (D.C. Cir. 2006) (explaining that "it makes good sense to burden a defendant who has apparently concealed assets" to prove that "he has no such assets and thus cannot pay the fine").

---

[4] Unlike the Sentencing Guidelines, under which the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012).

Here, Howard's financial assets and monthly income suggest that he has the ability to pay a fine in addition to restitution. *See* PSR ¶ 64-66. Although Howard's $500 restitution obligation takes precedence, the Court should also impose a $500 fine to reflect the seriousness of the offense conduct and to provide adequate deterrence.

## VII.   CONCLUSION

Balancing the § 3553(a) factors, the government recommends that this Court sentence Howard to 21 days of incarceration, 12 months of probation, and a $500 fine. The government further requests that the Court impose, consistent with the plea agreement in this case, $500 in restitution payable to the Architect of the Capitol. Such a sentence promotes respect for the law and deters future political riots by imposing meaningful penalties on Howard, while recognizing his acceptance of responsibility.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:   */s/ Jake E. Struebing*
JAKE E. STRUEBING
Assistant U.S. Attorney
D.C. Bar No. 1673297
U.S. Attorney's Office for the
District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
Phone: (202) 252-6931
Email: Jake.Struebing@usdoj.gov